PEOPLE v SKINNER

Docket No. 317892. Submitted May 8, 2015, at Detroit. Decided August 20, 2015, at 9:05 a.m. Leave to appeal sought.

Tia Marie-Mitchell Skinner was charged in the St. Clair Circuit Court and convicted of first-degree premeditated murder, MCL 750.316(1)(a), attempted murder, MCL 750.91, and conspiracy to commit murder, MCL 750.157a, following a jury trial. The charges stemmed from defendant's arrangement to have her parents murdered when she was 17 years old. The court, Daniel J. Kelly, J., sentenced defendant to mandatory life without parole for the first-degree-murder conviction and life sentences for the attempted murder and conspiracy convictions. Defendant appealed. While her appeal was pending, the United States Supreme Court decided *Miller v Alabama*, 567 US ___; 132 S Ct 2455 (2012), holding that a mandatory sentence of life without parole for a juvenile offender violates the Eighth Amendment. Subsequently, the Court of Appeals, SHAPIRO, P.J., and SERVITTO and RONAYNE KRAUSE, JJ., affirmed defendant's convictions and the life sentences for attempted murder and conspiracy in an unpublished opinion per curiam, issued February 21, 2013 (Docket No. 306903), but remanded for resentencing on defendant's first-degree-murder conviction to consider the factors set forth in *Miller*. The trial court held a resentencing hearing and again sentenced defendant to life without parole for the first-degree-murder conviction, and defendant appealed that sentence. While that appeal was pending, the Legislature enacted MCL 769.25 in response to *Miller*, establishing a framework for imposing a sentence of life without parole on a juvenile. After the Michigan Supreme Court decided *People v Carp*, 496 Mich 440 (2014), which concerned the retroactivity of *Miller*, the Court of Appeals remanded this case for a resentencing hearing in accordance with MCL 769.25. On remand, defendant moved to empanel a jury, arguing that a jury should make the factual findings mandated by MCL 769.25(6). The trial court denied defendant's motion and after hearing evidence from both defendant and the prosecution, again sentenced defendant to life without parole for the first-degree-murder conviction. Defendant appealed, arguing that MCL 769.25 violated her Sixth Amendment right to a jury

because it exposed her through judicial fact-finding to a harsher penalty than was otherwise authorized by the jury's verdict.

The Court of Appeals *held*:

1. *Miller* categorically barred mandatory sentences of life without parole for juveniles. *Miller* allowed the imposition of an individualized life-without-parole sentence in homicide cases, however, in the rare situation of a juvenile whose crime reflected irreparable corruption and discussed a range of factors relevant to a court's determination of whether a particular juvenile was such an offender. Those factors are the juvenile's chronological age and its hallmark features (such as immaturity, impetuosity, and the failure to appreciate risks and consequences), the juvenile's family and home environment (including whether that environment was brutal or dysfunctional and whether the juvenile could have extricated himself or herself from it), the circumstances of the homicide (including the extent of the juvenile's participation and the way familial and peer pressures might have affected him or her), whether the juvenile might have been charged with and convicted of a lesser offense if not for the incompetence associated with youth (such as an inability to deal with police officers or prosecutors, including on a plea agreement, and the juvenile's incapacity to assist his or her own attorneys), and whether the juvenile exhibited the potential for rehabilitation.

2. As a response to *Miller*, MCL 769.25(2) allows the prosecuting attorney to file a motion to sentence the juvenile to life without parole if a defendant was less than 18 years of age when he or she committed any of certain offenses, including first-degree murder. If the prosecuting attorney does not file the motion, MCL 769.25(4) and (9) require the court to sentence the juvenile to a term of years, with a maximum term of not less than 60 years and a minimum term of not less than 25 years or more than 40 years. This constitutes a default sentencing range for individuals who commit first-degree murder before turning 18 years of age. If the prosecuting attorney does file a motion for a life-without-parole sentence, however, MCL 769.25(6) requires the court to conduct a hearing on the motion as part of the sentencing process. At the hearing, the trial court must consider the factors listed in *Miller* and may consider any other criteria relevant to its decision, including the juvenile's record while incarcerated. Under MCL 769.25(7), the court must specify on the record the aggravating and mitigating circumstances it considered and the reasons supporting the sentence imposed. The court may consider evidence presented at trial together with any evidence presented at the sentencing hearing.

3. In a line of cases that began with *Apprendi v New Jersey*, 530 US 466 (2000), and culminated with *Alleyne v United States*, 570 US ___; 133 S Ct 2151 (2013), the United States Supreme Court held that other than a prior conviction, any fact that increases either the floor or the ceiling of a criminal defendant's sentence beyond that which a court may impose solely on the basis of facts reflected in the jury's verdict or admitted by the defendant must be submitted to a jury and proved beyond a reasonable doubt. The touchstone for determining whether a jury must find the fact is whether the fact constitutes an "element" or an "ingredient" of the charged offense. A fact is by definition an element of the offense and must be submitted to the jury if it increases the punishment above what is otherwise legally pre-scribed. When a finding of fact alters the legally prescribed punishment so as to aggravate it, that fact necessarily forms a constituent part of a new offense and must be submitted to the jury. In this case, following the jury's verdict and absent a prosecution motion seeking a sentence of life without parole, the legally prescribed maximum punishment that defendant faced for her first-degree-murder conviction was imprisonment for a term of years. Because MCL 769.25 authorizes a trial court to enhance that sentence to life without parole on the basis of factual findings on the *Miller* factors that were not made by a jury beyond a reasonable doubt but were found by the court, the statute offends the Sixth Amendment and defendant was entitled to resentencing on that offense.

4. Although portions of MCL 769.25 are unconstitutional, the statute was not void in its entirety. MCL 769.25 remains operable if the findings on the *Miller* factors are made by a jury beyond a reasonable doubt. That is, following a conviction of first-degree murder and a motion by the prosecuting attorney for a sentence of life without parole, absent the defendant's waiver the trial court should empanel a jury and hold a sentencing hearing at which the prosecution must prove that the *Miller* factors support a conclusion that the offense reflects irreparable corruption beyond a reasonable doubt. During this hearing, both sides must be afforded the opportunity to present relevant evidence, and each victim must have the opportunity to offer testimony in accordance with MCL 769.25(8). Following the close of proofs, the trial court should instruct the jury that it must consider whether in light of the *Miller* factors and any other relevant evidence, the defendant's offense reflects irreparable corruption beyond a rea-sonable doubt sufficient to impose a sentence of life without parole. Alternatively, if the jury decides this question in the

negative, then the court should use its discretion to sentence the juvenile to a term of years in accordance with MCL 769.25(9).

*Sentence vacated and case remanded for resentencing.*

SAWYER, J., dissenting, concluded that *Apprendi* and its progeny established only that the Sixth Amendment right to a jury trial requires the jury to find those facts necessary to impose a sentence greater than that authorized in the statute itself on the basis of the conviction itself. The question is not whether the court engages in judicial fact-finding, but whether the defendant is entitled to a lesser sentence without those facts being found. Nothing in MCL 769.25 established a legal entitlement for a juvenile defendant to be sentenced to a term of years rather than life. A juvenile offender who committed first-degree murder knows that he or she is risking being sentenced to life in prison without parole simply upon the jury's conviction for first-degree murder without the necessity of the jury's finding any additional facts regarding the crime. MCL 769.25(6) requires the trial court to conduct a hearing before it may impose a sentence of life without parole on a juvenile offender and requires that the trial court consider the factors listed in *Miller*, as well as any other criteria the trial court deems relevant to its decision. MCL 769.25(7) then requires the court to specify on the record the aggravating and mitigating circumstances it considered and the court's reasons supporting the sentence imposed. MCL 769.25(7) does not require the trial court to find any particular facts before it is authorized to impose a sentence of life without parole. Rather, after conducting the hearing and considering the evidence presented at the hearing as well as the evidence presented at trial, the trial court makes its decision and must state on the record the reasons for that decision. Both *Miller* and the statute merely require the sentencing court to take into account the individual circumstances of the juvenile offender before determining whether a sentence of life without parole is appropriate in each particular case. Under MCL 769.25, the only factual finding necessary to authorize the trial court to impose a sentence of life without parole was that defendant's involvement in the killing of her father constituted first-degree murder. The jury concluded that it did. Therefore, *Apprendi* and the Sixth Amendment were satisfied, and the trial court had the statutory authority to impose the sentence of life without parole. Judge SAWYER would have affirmed.

1. CONSTITUTIONAL LAW — JUVENILES — HOMICIDE — SENTENCES — LIFE WITHOUT PAROLE — USE OF JUDICIALLY FOUND FACTS TO IMPOSE.

Under MCL 769.25(4) and (9), the default sentencing range for individuals who committed first-degree murder before turning 18

years of age is a term of years, with a maximum term of not less than 60 years and a minimum term of not less than 25 years or more than 40 years; MCL 769.25 violates the Sixth Amendment to the extent that it authorizes a trial court to enhance that default sentence to life without parole on the basis of factual findings that were not made by a jury but were found by the court, and a defendant sentenced in that manner is entitled to resentencing on the offense.

2. CONSTITUTIONAL LAW — JUVENILES — HOMICIDE — SENTENCES — LIFE WITHOUT PAROLE — FACTORS ALLOWING.

The Eighth Amendment allows the imposition of an individualized life-without-parole sentence in homicide cases in the rare situation of a juvenile whose crime reflected irreparable corruption; factors relevant to a court's determination of whether a particular juvenile is such an offender are the juvenile's chronological age and its hallmark features (such as immaturity, impetuosity, and the failure to appreciate risks and consequences), the juvenile's family and home environment (including whether that environment was brutal or dysfunctional and whether the juvenile could have extricated himself or herself from it), the circumstances of the homicide (including the extent of the juvenile's participation and the way familial and peer pressures might have affected the juvenile), whether the juvenile might have been charged with and convicted of a lesser offense if not for the incompetence associated with youth (such as an inability to deal with police officers or prosecutors, including on a plea agreement, and the juvenile's incapacity to assist his or her own attorneys), and whether the juvenile exhibits the potential for rehabilitation.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Michael D. Wendling*, Prosecuting Attorney, and *Hilary B. Georgia*, Senior Assistant Prosecuting Attorney, for the people.

University of Michigan Juvenile Justice Clinic (by *Kimberly Thomas* and *Frank E. Vandervort*) for defendant.

Amicus Curiae:

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, and *Linus Banghart-Linn*, Assistant Attorney General, for the Attorney General.

Before: HOEKSTRA, P.J., and SAWYER and BORRELLO, JJ.

BORRELLO, J. This case presents a constitutional issue of first impression concerning whether the Sixth Amendment mandates that a jury make findings on the factors set forth in *Miller v Alabama*, 567 US ___; 132 S Ct 2455; 183 L Ed 2d 407 (2012), as codified in MCL 769.25(6), before sentencing a juvenile homicide offender to life imprisonment without the possibility of parole. We hold that the Sixth Amendment mandates that juveniles convicted of homicide who face the possibility of a sentence of life without the possibility of parole have a right to have their sentences determined by a jury. In so holding, we expressly reserve the issue of whether *this* defendant should receive the penalty of life in prison without the possibility of parole for a jury. In this case, defendant requested and was denied her right to have a jury decide any facts mandated by MCL 769.25(6) with respect to her sentence. Accordingly, we vacate her sentence for first-degree murder and remand for resentencing on that offense consistent with this opinion.

I. BACKGROUND

In November 2010, at the age of 17, defendant arranged to have her parents, Paul and Mara Skinner, murdered. Specifically,

[t]he victims, defendant's parents, were viciously attacked in their bed in November 2010. Defendant's father was killed in the attack and defendant's mother suffered roughly 25 stab wounds. An investigation led to Jonathan Kurtz, defendant's boyfriend, and James Preston. The investigation also led to the discovery of a map of the neighborhood and a note containing tips on how to break into defendant's house and commit the murders. Cell

phone records revealed text messages between defendant, Kurtz, and Preston that indicated that the crime had been planned by all three. During an interview with police, defendant implicated Preston, then implicated Kurtz and Preston, and then admitted that she had talked to Kurtz about killing her parents. Defendant said that Kurtz was going to seek Preston's help.[1]

Defendant was charged in connection with the attacks and, following a trial, a jury convicted her of first-degree premeditated murder, MCL 750.316(1)(a), attempted murder, MCL 750.91, and conspiracy to commit murder, MCL 750.157a. On September 16, 2011, the trial court sentenced defendant to mandatory life without parole for the first-degree-murder conviction and life sentences each for the attempted-murder and conspiracy-to-commit-murder convictions. Defendant appealed her convictions and sentences.

While defendant's appeal was pending, on June 25, 2012, the United States Supreme Court decided *Miller*, 567 US at ___; 132 S Ct at 2460, wherein the Court held that mandatory sentences of life without parole for juvenile offenders violated the Eighth Amendment. Subsequently, this Court affirmed defendant's convictions and life sentences for attempted murder and conspiracy, but remanded for resentencing on defendant's first-degree-murder conviction to consider the factors set forth in *Miller*.[2]

On July 11, 2013, the trial court held a resentencing hearing and again sentenced defendant to life without parole for the first-degree-murder conviction. Defendant again appealed her sentence. On March 4, 2014, while defendant's appeal was pending, MCL 769.25

---

[1] *People v Skinner*, unpublished opinion per curiam of the Court of Appeals, issued February 21, 2013 (Docket No. 306903), p 1.

[2] *Id.*

took effect, which had been enacted in response to *Miller* and established a framework for imposing a sentence of life without parole on a juvenile convicted of, *inter alia*, first-degree murder. Meanwhile, this Court ordered defendant's appeal held in abeyance pending our Supreme Court's decision in *People v Carp*, 496 Mich 440; 852 NW2d 801 (2014), which concerned the retroactivity of *Miller*. Following the decision in *Carp*, this Court remanded defendant's case to the trial court for a second resentencing—third sentencing—hearing to be conducted in accordance with MCL 769.25; this Court retained jurisdiction.[3]

On second remand, defendant moved to empanel a jury, arguing at the resentencing hearing that a jury should make the factual findings mandated by MCL 769.25(6). The trial court denied defendant's motion, and this Court denied defendant's emergency application for leave to appeal that order.[4] Thereafter, the trial court held the second resentencing hearing on September 18, 19, and 24, 2014, and, after hearing evidence from both defendant and the prosecution, the court again sentenced defendant to life without parole for the first-degree-murder conviction. Defendant now appeals that sentence as of right, arguing, *inter alia*, that MCL 769.25 violates her Sixth Amendment right to a jury because it exposes her to a harsher penalty than was otherwise authorized by the jury verdict.

## II. STANDARD OF REVIEW

We review constitutional issues de novo. *People v Nutt*, 469 Mich 565, 573; 677 NW2d 1 (2004). Issues of

---

[3] *People v Skinner*, unpublished order of the Court of Appeals, entered July 30, 2014 (Docket No. 317892).

[4] *People v Skinner*, unpublished order of the Court of Appeals, entered September 17, 2014 (Docket No. 323509).

statutory construction are also reviewed de novo. *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009).

### III. GOVERNING LAW

This case brings us to the intersection of the Sixth and Eighth Amendments of the United States Constitution. Specifically, the issue before us illustrates, following *Miller*, the interplay between the Eighth Amendment's limitations with respect to sentencing a juvenile to life imprisonment without the possibility of parole and a juvenile's right to a jury trial under the Sixth Amendment. We proceed with a review of the seminal case of *Miller* before discussing *Miller*'s impact on Michigan's sentencing scheme; we then review relevant United States Supreme Court Sixth Amendment jurisprudence before applying that precedent to Michigan's post-*Miller* juvenile-sentencing scheme.

#### A. *MILLER v ALABAMA*

*Miller* is part of a line of growth in the Supreme Court's Eighth Amendment jurisprudence relative to juvenile offenders. This precedent can in part be traced back to *Thompson v Oklahoma*, 487 US 815; 108 S Ct 2687; 101 L Ed 2d 702 (1988), wherein a plurality of the Court held that the Eighth Amendment categorically barred "the execution of any offender under the age of 16 at the time of the crime." *Roper v Simmons*, 543 US 551, 561; 125 S Ct 1183; 161 L Ed 2d 1 (2005), citing *Thompson*, 487 US at 818-838 (opinion by Stevens, J.). Subsequently, in *Roper*, 543 US at 568-579, the Court expanded on the rationale in the *Thompson* plurality and held that the Eighth Amendment categorically barred imposition of the death penalty on all juveniles under the age of 18 when their crimes were

committed, irrespective of the offense. The Court reasoned that "[c]apital punishment must be limited to those offenders who commit a narrow category of the most serious crimes and whose extreme culpability makes them the most deserving of execution." *Id.* at 568 (quotation marks and citation omitted). The Court reasoned that because of the unique differences between juveniles and adults, "juvenile offenders cannot with reliability be classified among the worst offenders." *Id.* at 569. In particular, the Court noted, juveniles exhibit " '[a] lack of maturity and underdeveloped sense of responsibility' " that " 'often result in impetuous and ill-considered actions and decisions.' " *Id.* (citation omitted) (alteration in original). Additionally, "juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure," and "the character of a juvenile is not as well formed as that of an adult." *Id.* at 569-570. Thus, "neither retribution nor deterrence provides adequate justification for imposing the death penalty on juvenile offenders . . . ." *Id.* at 572.

Following *Roper*, under the Eighth Amendment the maximum penalty that could be imposed on a juvenile offender was life imprisonment without the possibility of parole. The Court further limited that form of punishment in *Graham v Florida*, 560 US 48; 130 S Ct 2011; 176 L Ed 2d 825 (2010), and *Miller*. Specifically, in *Graham*, the Court held that the Eighth Amendment categorically barred a sentence of life without parole for juvenile "nonhomicide offenders." *Graham*, 560 US at 74. The *Graham* Court reasoned that juveniles "who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment . . . ." *Id.* at 69. The Court explained that, unlike "nonhomicide" offenses, homicide is unique with respect to its "moral deprav-

ity" and the injury it inflicts on its victim and the
public and concluded: "It follows that, when compared
to an adult murderer, a juvenile offender who did not
kill or intend to kill has a twice diminished moral
culpability. The age of the offender and the nature of
the crime each bear on the analysis." *Id.* (quotation
marks and citations omitted). The Court proceeded to
establish a bright-line categorical bar on sentences of
life without parole for juvenile nonhomicide offenders.
*Id.* at 74. Although a state was not "required to
guarantee eventual freedom," juveniles convicted of
nonhomicide offenses were to be afforded "some mean-
ingful opportunity to obtain release based on demon-
strated maturity and rehabilitation." *Id.* at 75.

Building on *Roper* and *Graham*, the Supreme Court
held in *Miller* that, irrespective of the offense, *man-
datory* life sentences without the possibility of parole
for juvenile offenders violated the Eighth Amend-
ment. *Miller*, 567 US at ___; 132 S Ct at 2460. Given
the unique characteristics of juveniles, the Court
reasoned, the Eighth Amendment required consider-
ation of an offender's youthfulness during sentencing,
something that mandatory sentencing schemes failed
to do. *Id.* at ___; 132 S Ct at 2464-2466. The Court
explained:

> Most fundamentally, *Graham* insists that youth mat-
> ters in determining the appropriateness of a lifetime of
> incarceration without the possibility of parole. In the
> circumstances there, juvenile status precluded a life-
> without-parole sentence, even though an adult could re-
> ceive it for a similar crime. And in other contexts as well,
> the characteristics of youth, and the way they weaken
> rationales for punishment, can render a life-without-
> parole sentence disproportionate. "An offender's age," we
> made clear in *Graham*, "is relevant to the Eighth Amend-
> ment," and so "criminal procedure laws that fail to take

defendants' youthfulness into account at all would be flawed." [*Id.* at ___; 132 S Ct at 2465-2466 (citation omitted).]

Drawing from capital punishment cases, the Supreme Court reasoned that life-without-parole sentences were analogous to capital punishment for juveniles and, therefore, the Eighth Amendment mandated individualized sentencing for this particularly harsh form of punishment. *Id.* at ___; 132 S Ct at 2466-2467. The *Miller* Court referred to *Woodson v North Carolina*, 428 US 280, 304; 96 S Ct 2978; 49 L Ed 2d 944 (1976), wherein the Supreme Court struck down a mandatory death-penalty sentencing scheme because the scheme "gave no significance to 'the character and record of the individual offender or the circumstances' of the offense, and 'exclude[ed] from consideration . . . the possibility of compassionate or mitigating factors.' " *Miller*, 567 US at ___; 132 S Ct at 2467 (alteration in original). Additionally, the Supreme Court noted that

> [s]ubsequent decisions have elaborated on the requirement that capital defendants have an opportunity to advance, and the judge or jury a chance to assess, any mitigating factors, so that the death penalty is reserved only for the most culpable defendants committing the most serious offenses. [*Id.* at ___; 132 S Ct at 2467 (citations omitted).]

In the context of juveniles, the Supreme Court's individualized sentencing jurisprudence illustrated the importance that "a sentencer have the ability to consider the mitigating qualities of youth" in assessing culpability including, among other things, age, background, and mental and emotional development. *Id.* at ___; 132 S Ct at 2467 (quotation marks and citation omitted).

The Supreme Court concluded that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id.* at ___; 132 S Ct at 2469. However, the Supreme Court did not categorically bar life-without-parole sentences for juveniles convicted of a homicide offense provided that the sentencer "take[s] into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at ___; 132 S Ct at 2469. The Supreme Court cautioned that

> appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great difficulty we noted in *Roper* and *Graham* of distinguishing at this early age between "the juvenile offender whose crime reflects unfortunate yet transient immaturity, and *the rare juvenile offender whose crime reflects irreparable corruption.*" [*Id.* at ___; 132 S Ct at 2469, quoting *Roper*, 543 US at 573 (emphasis added).]

Thus, after *Miller*, mandatory life-without-parole sentences for juvenile offenders are unconstitutional in all cases; however, in homicide cases, an individualized life-without-parole sentence may be imposed when the crime reflects "irreparable corruption." The *Miller* Court did not establish a bright-line test to determine whether a juvenile's crime reflects irreparable corruption; instead, "*Miller* discussed a range of factors relevant to a sentencer's determination of whether a particular defendant is a ' "rare juvenile offender whose crime reflects irreparable corruption." ' " *People v Gutierrez*, 58 Cal 4th 1354, 1388; 171 Cal Rptr 3d 421; 324 P3d 245 (2014), quoting *Miller*, 567 US at ___; 132 S Ct at 2469. Those factors were set forth as follows:

. . . Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys . . . . And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it. [*Miller*, 567 US at ___; 132 S Ct at 2468.]

*Miller*, therefore, categorically barred mandatory life-without-parole sentences for juveniles, but in doing so, the Supreme Court also set forth a framework for imposing that sentence when a juvenile's homicide offense reflects irreparable corruption. That is, the Supreme Court provided factors to be used during sentencing that serve as a guidepost for determining whether a juvenile's homicide offense reflects irreparable corruption.

### B. MICHIGAN'S SENTENCING SCHEME POST-*MILLER*

*Miller* had a wide-ranging effect nationwide in that, with respect to juvenile offenders, it invalidated state statutes that imposed mandatory life-without-parole-sentences.[5] In Michigan, the Legislature enacted 2014

___

[5] See, e.g., Russell, *Jury Sentencing and Juveniles: Eighth Amendment Limits and Sixth Amendment Rights*, 56 BC L Rev 553, 583 (2015)

PA 22, codified at MCL 769.25 and MCL 769.25a,[6] in response to *Miller*. Relevant to this case, MCL 769.25 provides in pertinent part:

> (1) This section applies to a criminal defendant who was less than 18 years of age at the time he or she committed an offense described in subsection (2) if either of the following circumstances exists:
>
> (a) The defendant is convicted of the offense on or after [March 4, 2014].
>
> (b) The defendant was convicted of the offense before [March 4, 2014] and either of the following applies:
>
> (*i*) The case is still pending in the trial court or the applicable time periods for direct appellate review by state or federal courts have not expired.
>
> (*ii*) On June 25, 2012 the case was pending in the trial court or the applicable time periods for direct appellate review by state or federal courts had not expired.
>
> (2) The prosecuting attorney may file a motion under this section to sentence a defendant described in subsection (1) to imprisonment for life without the possibility of parole if the individual is or was convicted of any of the following violations:
>
>             \*    \*    \*
>
> (b) A violation of . . . [MCL 750.316] . . . .[7]
>
>             \*    \*    \*

---

(noting that "in the mere two years since *Miller* was decided, the decision has been cited in more than 1000 cases nationwide" and that "sixteen state legislatures have enacted statutes in response to *Graham* and *Miller*, and many others are considering bills").

[6] MCL 769.25a concerns the retroactivity of MCL 769.25, and it is not at issue in this case.

[7] In addition to first-degree murder, MCL 769.25(2)(a) through (d) provide that a prosecuting attorney may move for imposition of a life-without-parole sentence for juveniles convicted of several other offenses. Subdivision (a) includes MCL 333.17764(7) (mislabeling drugs

(3) . . . If the prosecuting attorney intends to seek a sentence of imprisonment for life without the possibility of parole for a case described under subsection (1)(b), the prosecuting attorney shall file the motion within 90 days after [March 4, 2014]. The motion shall specify the grounds on which the prosecuting attorney is requesting the court to impose a sentence of imprisonment for life without the possibility of parole.

(4) If the prosecuting attorney does not file a motion under subsection (3) within the time periods provided for in that subsection, *the court shall sentence the defendant to a term of years* as provided in subsection (9).

\* \* \*

(6) If the prosecuting attorney files a motion under subsection (2), the court shall conduct a hearing on the motion as part of the sentencing process. At the hearing,

─────────────

with intent to kill). Besides first-degree murder, Subdivision (b) includes MCL 750.16(5) (adulteration of drugs with intent to kill); MCL 750.18(7) (mixing drugs improperly with intent to kill); MCL 750.436(2)(e) (poisoning); and MCL 750.543f (terrorism). Subdivision (c) includes Chapter XXIII of the Michigan Penal Code, MCL 750.200 to MCL 750.212a, concerning explosives. And finally, Subdivision (d) includes any other violation involving the death of another for which parole eligibility is expressly denied by law. The issue of whether these offenses constitute "homicide offenses" under *Graham* and *Miller* for purposes of sentencing juvenile offenders to life without parole is not before this Court. See, e.g., *Graham*, 560 US at 68-69 (noting in categorically barring life-without-parole sentences for juveniles convicted of nonhomicide offenses that "because juveniles have lessened culpability they are less deserving of the most severe punishments" and that "defendants *who do not kill, intend to kill, or foresee that life will be taken* are categorically less deserving of the most serious forms of punishment than are murderers") (emphasis added). See also *Miller*, 567 US at ___; 132 S Ct at 2475-2476 (Breyer, J., concurring) (stating that "[g]iven *Graham*'s reasoning, the kinds of homicide that can subject a juvenile offender to life without parole *must exclude instances where the juvenile himself neither kills nor intends to kill the victim*") (emphasis added). For purposes of this case, there is no dispute that premeditated first-degree murder constitutes a homicide offense under *Graham* and *Miller* for which defendant is eligible to receive life without parole.

the trial court shall consider the factors listed in <u>Miller</u> v <u>Alabama</u>, 576 [sic] US ____; 183 L Ed 2d 407; 132 S Ct 2455 (2012), and may consider any other criteria relevant to its decision, including the individual's record while incarcerated.

(7) At the hearing under subsection (6), the court shall specify on the record the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed. The court may consider evidence presented at trial together with any evidence presented at the sentencing hearing.

\* \* \*

(9) If the court decides not to sentence the individual to imprisonment for life without parole eligibility, the court shall sentence the individual to a term of imprisonment for which the maximum term shall be not less than 60 years and the minimum term shall be not less than 25 years or more than 40 years. [Emphasis added.]

This legislation "significantly altered Michigan's sentencing scheme for juvenile offenders convicted of crimes that had previously carried a sentence of life without parole." *Carp*, 496 Mich at 456. Specifically, under this new scheme,

[r]ather than imposing fixed sentences of life without parole on all defendants convicted of violating MCL 750.316, *MCL 769.25 now establishes a default sentencing range* for individuals who commit first-degree murder before turning 18 years of age. Pursuant to the new law, absent a motion by the prosecutor seeking a sentence of life without parole,

the court shall sentence the individual to a term of imprisonment for which the maximum term shall be not less than 60 years and the minimum term shall be not less than 25 years or more than 40 years. [MCL 769.25(4) and (9).]

> When, however, the prosecutor does file a motion seeking a life-without-parole sentence, the trial court "shall conduct a hearing on the motion as part of the sentencing process" and "shall consider the factors listed in Miller v Alabama . . . ." MCL 769.25(6). Accordingly, the sentencing of juvenile first-degree-murder offenders now provides for the so-called "individualized sentencing" procedures of *Miller.* [*Id.* at 458-459 (emphasis added) (bracketed citation in original).]

Thus, in response to *Miller*, and as explained in *Carp*, the Michigan Legislature created a default sentence for juvenile defendants convicted of first-degree murder. The default sentence is a term of years. See MCL 769.25(4) (providing that absent the prosecution's motion for a life-without-parole sentence, "the court *shall sentence the defendant to a term of years* as provided in subsection (9)") (emphasis added). Alternatively, a life-without-parole sentence may be imposed if the following framework is adhered to: (1) the prosecution timely files a motion seeking a life-without-parole sentence, (2) the trial court holds a sentencing hearing, (3) at the hearing, the trial court considers the factors listed in *Miller* (and "may consider any other criteria relevant to its decision"), and (4) the trial court specifies "the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed" (and "may consider evidence presented at trial *together with any evidence presented at the sentencing hearing*"). MCL 769.25(3), (6), and (7) (emphasis added).

Defendant contends that this sentencing scheme violates her Sixth Amendment right to a jury because it exposes her to a potential life-without-parole sentence, which is greater than the sentence otherwise authorized by the jury verdict standing alone.

The *Miller* Court did not address the issue of *who* should decide whether a juvenile offender receives a life-without-parole sentence, and we are unaware of any court that has addressed the issue. In the final paragraph of its opinion, the Court stated: *"Graham, Roper,* and our individualized sentencing decisions make clear that *a judge or jury* must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Miller,* 567 US at ___; 132 S Ct at 2475 (emphasis added). This passing reference to "a judge or jury" is not dispositive of the issue. "The Court's decision in *Miller* does not discuss who is empowered to make the sentencing decision that the case involves a 'rare' instance where the juvenile is 'irreparably corrupt' and may be sentenced to life without parole." Russell, *Jury Sentencing and Juveniles: Eighth Amendment Limits and Sixth Amendment Rights,* 56 BC L Rev 553, 569 (2015). Instead, *"Miller* generally avoids the issue by referencing the 'sentencer' throughout the opinion, rather than specifying a judge or a jury." *Id.* Moreover, "[b]ecause Sixth Amendment jury rights can be waived, *Miller's* reference to the judge as a possible sentencer is hardly dispositive." *Id.* (citation omitted). Indeed, in declining to address this issue,[8] our Supreme Court noted in *Carp* that, given recent Sixth Amendment jurisprudence, *"Miller's* reference to indi-

---

[8] In *Carp,* our Supreme Court noted:

As none of the defendants before this Court asserts that his sentence is deficient because it was not the product of a jury determination, we find it unnecessary to further opine on this issue and leave it to another day to determine whether the individualized sentencing procedures required by *Miller* must be performed by a jury in light of *Alleyne* [*v United States,* 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013)]. [*Carp,* 496 Mich at 491 n 20.]

vidualized sentencing being performed by a '*judge* or jury' might merely be instructive on the issue but not dispositive." *Carp*, 496 Mich at 491 n 20.

Because *Miller* did not directly address the issue of who decides a life sentence without the possibility of parole, and because there is no caselaw on point, we turn to the United States Supreme Court's relevant Sixth Amendment jurisprudence for guidance.

## C. SIXTH AMENDMENT RIGHT TO A JURY

In relevant part, the Sixth Amendment of the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." US Const, Am VI. The rights afforded under the Sixth Amendment are incorporated to the states by the Due Process Clause of the Fourteenth Amendment. *Presley v Georgia*, 558 US 209, 211-212; 130 S Ct 721; 175 L Ed 2d 675 (2010). "Taken together, these rights indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt' " and are deeply rooted in our nation's jurisprudence:

> [T]he historical foundation for our recognition of these principles extends down centuries into the common law. "[T]o guard against a spirit of oppression and tyranny on the part of rulers," and "as the great bulwark of [our] civil and political liberties," 2 J. Story, Commentaries on the Constitution of the United States 540-541 (4th ed. 1873), trial by jury has been understood to require that "*the truth of every accusation*, whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbours . . . ." 4 W. Blackstone,

Commentaries on the Laws of England 343 (1769) . . . .
[*Apprendi v New Jersey*, 530 US 466, 477; 120 S Ct 2348;
147 L Ed 2d 435 (2000) (citation omitted) (all alterations
but first in original).]

Cognizant of this historical backdrop, the United
States Supreme Court has recently expanded the scope
of a criminal defendant's Sixth Amendment right to a
jury in several cases commencing with *Apprendi*. In
that case, the defendant pleaded guilty of, *inter alia*, a
second-degree weapons offense, which carried a maxi-
mum penalty of between 5 and 10 years' imprisonment
under New Jersey law. *Id*. at 469-470. Thereafter, the
prosecutor filed a motion to enhance the defendant's
sentence under a New Jersey hate-crime statute that
permitted a sentencing judge to impose an enhanced
sentence of up to 20 years upon a finding that the
offender acted "with a purpose to intimidate an indi-
vidual or group" because of membership in a protected
class. *Id*. Following a hearing, the sentencing judge
found by a preponderance of the evidence that the
defendant had been motivated by racial animus and
sentenced him to 12 years' imprisonment, 2 more than
the maximum authorized under the law without the
enhancement. *Id*. at 471.

On appeal, the defendant argued, in part, that racial
animus had to be proved to a jury beyond a reasonable
doubt. *Id*. The Supreme Court agreed, holding that the
sentence violated the defendant's right to " 'a jury
determination that [he] is guilty of every element of
the crime with which he is charged, beyond a reason-
able doubt.' " *Id*. at 477 (citation omitted) (alteration in
original). The Court reasoned that the defendant's
Sixth Amendment jury right attached to both the
weapon offense and the hate-crime enhancement be-
cause "New Jersey threatened [the defendant] with
certain pains if he unlawfully possessed a weapon and

with additional pains if he selected his victims with a purpose to intimidate them because of their race." *Id*. at 476. "Merely using the label 'sentence enhancement' to describe the latter surely does not provide a principled basis for treating them differently." *Id*. Rather, "the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Id*. at 494. This is because "[o]ther than the fact of a prior conviction, *any fact that increases the penalty for a crime* beyond the prescribed statutory maximum *must be submitted to a jury* and proved beyond a reasonable doubt." *Id*. at 490 (emphasis added).

Two years later, in *Ring v Arizona*, 536 US 584, 588; 122 S Ct 2428; 153 L Ed 2d 556 (2002), the Supreme Court applied *Apprendi* to Arizona's death-penalty sentencing scheme, which authorized a trial judge to increase a capital defendant's maximum sentence from life imprisonment to death on the basis of judicially found aggravating factors. The Supreme Court concluded that, " '[i]n effect, the required finding . . . expose[d] [the defendant] to a greater punishment than that authorized by the jury's guilty verdict.' " *Id*. at 604 (citation omitted) (second alteration in original). Thus, the aggravating factors acted as the "functional equivalent" of elements of a greater offense and were required to be proved to a jury beyond a reasonable doubt. *Id*. at 609. The Court explained that when " 'the term "sentence enhancement" is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict.' " *Id*. at 605, quoting *Apprendi*, 530 US at 494 n 19. The relevant inquiry, the Supreme Court noted, was "one not of form but of effect," and "[i]*f a*

*State makes an increase in a defendant's authorized
punishment contingent on the finding of a fact, that
fact*—no matter how the State labels it—*must be found
by a jury beyond a reasonable doubt." Id.* at 602
(quotation marks and citation omitted) (emphasis
added).[9]

Taken together, *Apprendi* established and *Ring* re-
affirmed that other than a prior conviction, *any* finding
of fact that increases a criminal defendant's maximum
sentence must be proved to a jury beyond a reasonable
doubt. "In each case, we concluded that the defendant's
constitutional rights had been violated because the
judge had imposed a sentence greater than the maxi-
mum he could have imposed under state law without
the challenged factual finding." *Blakely v Washington*,
542 US 296, 303; 124 S Ct 2531; 159 L Ed 2d 403
(2004). In the years following, the Supreme Court
applied *Apprendi* to invalidate two state sentencing
schemes in Washington and California, both of which
share similarities with the sentencing scheme at issue
in this case.

In *Blakely*, the Supreme Court held that Washing-
ton's determinate sentencing scheme ran afoul of *Ap-
prendi*. In that case, the defendant pleaded guilty of,
*inter alia*, second-degree kidnapping with a firearm, a
Class B felony. *Id.* at 299. State law provided that
Class B felonies in general carried a statutory maxi-
mum of 10 years' imprisonment; however, under the

---

[9] In arriving at its holding, the *Ring* Court overruled, in part, *Walton
v Arizona*, 497 US 639; 110 S Ct 3047; 111 L Ed 2d 511 (1990), which had
rejected a Sixth Amendment challenge to the same sentencing scheme
approximately 12 years earlier. The Court reasoned that *Walton* and
*Apprendi* were "irreconcilable," explaining that "[c]apital defendants, no
less than noncapital defendants, . . . are entitled to a jury determination
of any fact on which the legislature conditions an increase in their
maximum punishment." *Ring*, 536 US at 589.

state's sentencing reform act, the standard sentence range for the second-degree kidnapping offense was 49 to 53 months. *Id.* The reform act authorized, but did not require, the sentencing judge to make an upward departure from the standard range upon a finding of " 'substantial and compelling reasons justifying an exceptional sentence.' " *Id.*, quoting Wash Rev Code 9.94A.120(2). The act listed nonexhaustive aggravating factors justifying such a departure. *Blakely*, 542 US at 299.

Relying on the reform act, the sentencing judge departed from the recommended standard sentence range and sentenced the defendant to 90 months' imprisonment—37 months more than the upper limit of the standard range—after finding that the defendant had acted with "deliberate cruelty," one of the statutory grounds for departure. *Id.* at 300. The state argued, in part, that there was no *Apprendi* violation because the statutory maximum authorized by law was the general 10-year maximum for Class B felonies as opposed to the 49 to 53 month standard range for second-degree kidnapping. *Id.* at 303. The Supreme Court rejected this argument, explaining that for purposes of *Apprendi*, the "statutory maximum" is the "maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* The Supreme Court stated:

> In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment" and the judge exceeds his proper authority. [*Id.* at 303-304 (citation omitted).]

The Court also rejected the state's argument that the reform act did not violate *Apprendi* because the sentencing judge retained discretion regarding whether to impose an enhanced sentence, as explained in more detail in a subsequent case:

> The State in *Blakely* had endeavored to distinguish *Apprendi* on the ground that "[u]nder the Washington guidelines, an exceptional sentence is within the court's discretion as a result of a guilty verdict." We rejected that argument. The judge could not have sentenced Blakely above the standard range without finding the additional fact of deliberate cruelty. Consequently, that fact was subject to the Sixth Amendment's jury-trial guarantee. [*Cunningham v California*, 549 US 270, 283; 127 S Ct 856; 166 L Ed 2d 856 (2007), citing *Blakely*, 542 US at 304-314 (citation omitted).]

The *Blakely* Court concluded that because "[t]he judge in this case could not have imposed the exceptional 90-month sentence solely on the basis of the facts admitted in the guilty plea," the sentence ran afoul of the Sixth Amendment. *Blakely*, 542 US at 304-305.

After deciding *Blakely*, the Supreme Court held in *Cunningham* that California's determinate sentencing law (DSL) violated the Sixth Amendment.[10] In *Cunningham*, the defendant had been convicted of a sex offense. *Cunningham*, 549 US at 275. Under the DSL, the offense was punishable by a lower (6-year), middle (12-year), and upper (16-year) sentence. *Id.* The DSL provided that " 'the court shall order imposition of the

---

[10] In another case following *Blakely*, the Supreme Court struck down certain provisions of the Federal Sentencing Guidelines on grounds that they violated the Sixth Amendment to the extent that they mandated enhanced sentences based on judicially found facts. *United States v Booker*, 543 US 220; 125 S Ct 738; 160 L Ed 2d 621 (2005). Given that this case does not involve sentencing guidelines, *Booker* is not highly instructive for purposes of our analysis.

middle term, unless there are circumstances in aggravation or mitigation of the crime.' " *Id.* at 277 (citation omitted). At a posttrial sentencing hearing, the sentencing judge departed from the 12-year middle term and imposed the 16-year upper term after finding by a preponderance of the evidence that there were six aggravating circumstances. *Id.* at 275-276.

On appeal, the Supreme Court held that the DSL violated the Sixth Amendment, explaining, "This Court has repeatedly held that, under the Sixth Amendment, *any fact that exposes a defendant to a greater potential sentence must be found by a jury*, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." *Id.* at 281 (emphasis added). The Court concluded that "[b]ecause the DSL allocates to judges sole authority to find facts permitting the imposition of an upper term sentence, the system violates the Sixth Amendment." *Id.* at 293.

In arriving at its holding, the *Cunningham* Court rejected the California Supreme Court's view that the DSL resembled a permissible "advisory system," explaining:

> Under California's system, judges are not free to exercise their discretion to select a specific sentence within a defined range. California's Legislature has adopted sentencing triads, three fixed sentences with no ranges between them. Cunningham's sentencing judge had no discretion to select a sentence within a range of 6 to 16 years. Her instruction was to select 12 years, nothing less and nothing more, unless she found facts allowing the imposition of a sentence of 6 or 16 years. Factfinding to elevate a sentence from 12 to 16 years, our decisions make plain, falls within the province of the jury employing a beyond-a-reasonable-doubt standard, not the bailiwick of a judge determining where the preponderance of

the evidence lies. [*Id.* at 292 (quotation marks and citation omitted).]

The *Cunningham* Court concluded, "Because the DSL authorizes the judge, not the jury, to find the facts permitting an upper term sentence, the system cannot withstand measurement against our Sixth Amendment precedent." *Id.* at 293.

*Apprendi* and its progeny concerned judicial fact-finding in the context of a criminal defendant's maximum sentence. In *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), the Supreme Court applied *Apprendi* in the context of mandatory minimum sentences. In *Alleyne,* a jury convicted the defendant of a federal robbery offense. The sentencing court increased the defendant's mandatory minimum sentence from five to seven years after finding that the defendant had brandished a weapon during the commission of the robbery. The defendant argued that the jury had not determined that he brandished a weapon and therefore he was not subject to the higher sentence. *Id.* at ___; 133 S Ct at 2155-2156. The Supreme Court agreed, rejecting the previous distinction it had drawn in *Harris v United States*, 536 US 545; 122 S Ct 2406; 153 L Ed 2d 524 (2002)—one that distinguished "between facts that increase the statutory maximum and facts that increase only the mandatory minimum." *Alleyne*, 570 US at ___; 133 S Ct at 2155. Instead, the *Alleyne* Court explained that "[t]he touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an 'element' or 'ingredient' of the charged offense." *Id.* at ___; 133 S Ct at 2158. And "a fact is by definition an element of the offense and must be submitted to the jury *if it increases the punishment above what is otherwise legally prescribed.*" *Id.* at ___;

133 S Ct at 2158 (emphasis added). This "definition of 'elements' necessarily includes not only facts that increase the ceiling, but also those that increase the floor." *Id.* at ___; 133 S Ct at 2158. The Supreme Court concluded:

> [T]he essential Sixth Amendment inquiry is whether a fact is an element of the crime. When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury. It is no answer to say that the defendant could have received the same sentence with or without that fact. [*Id.* at ___; 133 S Ct at 2162.]

*Apprendi* through *Alleyne* represents a line of growth in the Supreme Court's Sixth Amendment jurisprudence concerning the scope of a criminal defendant's right to a jury. This jurisprudence can be summarized as follows: Other than a prior conviction, *any fact* that increases either the floor or the ceiling of a criminal defendant's sentence beyond that which a court may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant must be submitted to a jury and proved beyond a reasonable doubt. See *Blakely*, 542 US 296; *Apprendi*, 530 US 466; *Ring*, 536 US 584; *Cunningham*, 549 US 270; *Alleyne*, 570 US ___; 133 S Ct 2151. We proceed by applying this jurisprudence to the sentencing scheme at issue in this case.

IV. APPLICATION

A. MCL 769.25 VIOLATES THE SIXTH AMENDMENT

Our application of the Supreme Court's Sixth Amendment jurisprudence begins with a determination of whether the findings mandated by MCL 769.25

constitute elements of the offense. *Alleyne*, 570 US at
___; 133 S Ct at 2162. To answer that question, we
must determine whether the findings "alter[] the le-
gally prescribed punishment so as to aggravate it" and,
if so, whether the findings "necessarily form[] a con-
stituent part of a new offense and must be submitted to
the jury" and proved beyond a reasonable doubt. *Id.* at
___; 133 S Ct at 2162.

In this case, following the jury's verdict and absent a
prosecution motion seeking a life-without-parole sen-
tence followed by additional findings by the trial court,
the legally prescribed maximum punishment that de-
fendant faced for her first-degree-murder conviction
was imprisonment for a term of years. Specifically,
MCL 750.316 provides in relevant part as follows:

> (1) *Except as provided in* . . . MCL 769.25 and 769.25a,
> a person who commits any of the following is guilty of first
> degree murder and shall be punished by imprisonment for
> life without eligibility for parole:
>
> (a) Murder perpetrated by means of poison, lying in
> wait, or any other willful, deliberate, and premeditated
> killing. [Emphasis added.]

The phrase "[e]xcept as provided in" means that
punishment for first-degree murder is contingent on
the provisions of MCL 769.25. As noted, MCL 769.25
contains provisions that establish a default term-of-
years prison sentence for a juvenile convicted of first-
degree murder. Specifically, the statute provides in
pertinent part that "[t]he prosecuting attorney may file
a motion under this section to sentence a [juvenile
defendant] to imprisonment for life without the possi-
bility of parole if the individual is or was convicted of"
first-degree murder. MCL 769.25(2)(b). Absent this
motion, "the court *shall sentence the defendant to a
term of years.* . . ." MCL 769.25(4) (emphasis added).

The effect of this sentencing scheme clearly establishes a default term-of-years sentence for juvenile defendants convicted of first-degree murder. See *Carp*, 496 Mich at 458 (explaining that "MCL 769.25 now *establishes a default sentencing range* for individuals who commit first-degree murder before turning 18 years of age") (emphasis added);[11] MCL 769.25(4) (providing that, absent the prosecution's motion to impose a sentence of life without parole, "*the court shall sentence the defendant to a term of years* as provided in subsection (9)") (emphasis added).[12]

Stated differently, at the point of conviction, absent a motion by the prosecution and without additional findings on the *Miller* factors, the maximum punishment that a trial court may impose on a juvenile convicted of first-degree murder is a term-of-years prison sentence. See *Blakely*, 542 US at 303-304 (holding that for purposes of *Apprendi*, the " 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings"). Thus, following her jury conviction, defendant was subject to a term-of-years prison sentence. Once the

---

[11] Our dissenting colleague erroneously contends that we "conflate" the language in *Carp*. *Post* at 77. To the contrary, Justice MARKMAN, writing for the majority in *Carp*, described MCL 769.25 as follows: "Rather than imposing fixed sentences of life without parole on all defendants convicted of violating MCL 750.316, MCL 769.25 now *establishes a default sentencing range* for individuals who commit first-degree murder before turning 18 years of age." *Carp*, 496 Mich at 458 (emphasis added). The dissent fails to articulate what part of this language we "conflate."

[12] MCL 769.25(9) governs a term-of-years sentence for a juvenile defendant, and it requires a sentencing court to impose "a term of imprisonment for which the maximum term shall be not less than 60 years and the minimum term shall be not less than 25 years or more than 40 years."

prosecuting attorney filed a motion to impose a life-without-parole sentence, defendant was exposed to a potentially harsher penalty contingent on findings made by the trial court. This violated defendant's right to " 'a jury determination that [she] is guilty of every element of the crime with which [she] is charged, beyond a reasonable doubt,' " because "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 US at 477, 490 (citation omitted).

The Legislature conditioned defendant's life-without-parole sentence on two things: (1) the prosecution's filing of a motion to impose the sentence and (2) the trial court's findings with respect to the *Miller* factors and "any other criteria relevant to its decision . . . ." MCL 769.25(6). This scheme authorized the trial court to enhance defendant's sentence from a term of years to life without parole on the basis of findings made by the court, not a jury. Therefore, the sentencing scheme is akin to the schemes at issue in *Apprendi*, *Ring*, *Blakely*, and *Cunningham*. Each of those cases involved a sentencing scheme that authorized a court to enhance a defendant's maximum sentence solely on the basis of judicial fact-finding. The United States Supreme Court found these schemes unconstitutional, explaining, "This Court has repeatedly held that, under the Sixth Amendment, *any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge . . . .*" *Cunningham*, 549 US at 281 (emphasis added). Similarly, the sentencing scheme in this case cannot stand when examined under the lens of the Supreme Court's Sixth Amendment jurisprudence.

Clearly, the findings mandated by MCL 769.25(6) "expose the defendant to a greater punishment than that authorized by the jury's guilty verdict," *Apprendi*, 530 US at 494, and therefore act as the "functional equivalent" of elements of a greater offense that must be proved to a jury beyond a reasonable doubt, *Ring*, 536 US at 609. An enhanced punishment under MCL 769.25 is not based merely on defendant's prior convictions, on facts admitted by defendant, or on facts that are part and parcel of the elements that were submitted to the jury during the guilt phase of the proceeding. Rather, like in *Apprendi*, 530 US at 476, in this case the state threatened defendant with certain pains— i.e., a term-of-years sentence—following her jury conviction of first-degree murder and with additional pains—i.e., life without parole—following additional findings by the trial court. "Merely using the label 'sentence enhancement' to describe the latter surely does not provide a principled basis for treating them differently." *Id.* The effect of MCL 769.25 plainly subjects defendant to harsher punishment on the basis of judicially found facts in contravention of the Sixth Amendment.

We note that MCL 769.25 is unique to Michigan's sentencing scheme, so our Supreme Court's recent decision in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), while not directly on point, lends support to our conclusion that a defendant's maximum sentence cannot be increased on the basis of judicial fact-finding. In *Lockridge*, our Supreme Court was tasked in relevant part with addressing whether, for purposes of *Alleyne*, "a judge's determination of the appropriate sentencing guidelines range . . . establishes a 'mandatory minimum sentence,' such that the facts used to score the offense variables must be admitted by the defendant or established beyond a

reasonable doubt to the trier of fact . . . ." *People v Lockridge*, 496 Mich 852 (2014). The *Lockridge* Court answered this question in the affirmative, holding that Michigan's sentencing guidelines were constitutionally deficient under *Apprendi* as extended by *Alleyne*. *Lockridge*, 498 Mich at 364. The deficiency was "the extent to which the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e., the 'mandatory minimum' sentence under *Alleyne*." *Id.*

As a remedy, the *Lockridge* Court severed MCL 769.34(2) "to the extent that it makes the sentencing guidelines range as scored on the basis of facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt mandatory" and struck down the requirement in MCL 769.34(3) "that a sentencing court that departs from the applicable guidelines range must articulate a substantial and compelling reason for that departure." *Id.* at 364-365. Going forward, "a sentencing court must determine the applicable guidelines range and take it into account when imposing a sentence," but "a guidelines minimum sentence range calculated in violation of *Apprendi* and *Alleyne* is advisory only and . . . sentences that depart from that threshold are to be reviewed by appellate courts for reasonableness." *Id.* at 365.

*Lockridge* concerned the constitutionality of Michigan's sentencing guidelines—guidelines that govern a defendant's mandatory minimum sentence. Importantly, however, the *Lockridge* Court addressed the constitutionality of the guidelines with the understanding that a defendant's *maximum* sentence is fixed by law and not affected by the guidelines. See *id.* at

377-378 (noting that "scoring the sentencing guidelines and establishing the guidelines minimum sentence range does not alter the maximum sentence"). In contrast, this case concerns the enhancement of a juvenile defendant's *maximum* sentence for first-degree murder under MCL 750.316 and MCL 769.25. An enhanced maximum sentence imposed under this statute is not governed by the sentencing guidelines, but rather is part of a legislative response to the United States Supreme Court's holding in *Miller*. Indeed, this case is unlike any other sentencing case decided in Michigan in that MCL 769.25 is a sui generis exception to the rule in Michigan that apart from the habitual-offender statutes, maximum sentences are fixed by law and cannot be increased on the basis of judicially found facts. See, e.g., *People v McCuller*, 479 Mich 672, 694; 739 NW2d 563 (2007) (noting that apart from the habitual-offender statutes, a criminal defendant's maximum sentence in Michigan is "prescribed by MCL 769.8, which requires a sentencing judge to impose no less than the prescribed statutory maximum sentence as the maximum sentence for every felony conviction") (quotation marks and citation omitted).

That this case does not involve the scoring of sentencing guidelines to fix a mandatory minimum sentence, but rather involves the constitutionality of increasing a maximum sentence, places it squarely within the familiar purview of *Apprendi*, *Ring*, *Blakely*, and *Cunningham*. The analysis, therefore, is simple: Apart from a prior conviction or a fact admitted by the defendant, any fact that exposes a defendant to an increased maximum sentence beyond that which is authorized by the jury's verdict standing alone must be submitted to a jury and proved beyond a reasonable doubt. Moreover, in the context of increasing a maxi-

mum sentence using judicially found facts, judicial discretion cannot substitute for a defendant's constitutional right to a jury. See, e.g., *Alleyne*, 570 US at ___; 133 S Ct at 2162 (observing that "if a judge were to find a fact that increased the statutory maximum sentence, such a finding would violate the Sixth Amendment, even if the defendant ultimately received a sentence falling within the original sentencing range (*i.e.*, the range applicable without that aggravating fact)"); *Blakely*, 542 US at 305, 305 n 8 (noting that when a court acquires the authority to impose an enhanced sentence "only upon finding some additional fact," "[w]hether the judicially determined facts *require* a sentence enhancement or merely *allow* it, the verdict alone does not authorize the sentence" and it is therefore constitutionally deficient).

The prosecution argues that MCL 769.25 does not expose defendant to an increased penalty because "[a]t the time of conviction, [defendant] faced the potential penalty of life without possibility of parole" and the "maximum allowable punishment is—at both the point of conviction and at sentencing—life without the possibility of parole." Similarly, the Attorney General, as amicus curiae, argues: "The statutory maximum penalty for first-degree murder—even for minors—is life without parole. . . . No facts are needed to authorize the sentence, beyond those contained in the jury's verdict." However, if, as the prosecution and the Attorney General contend, the "maximum allowable punishment" at the point of defendant's conviction is life without parole, then that sentence would offend the Constitution. Under *Miller*, a mandatory *default sentence* for juveniles *cannot* be life imprisonment without the possibility of parole. Such a sentence would not be an individualized sentence taking into account the factors enumerated in *Miller*. See, e.g., Russell, 56 BC

L Rev at 582 (explaining that under *Miller*, "[t]he default is *not* life without parole" and that "[i]t is only in the rare or unusual case—where a factual finding of irreparable corruption is made—that a juvenile may be exposed to life without parole"). This is why MCL 769.25 creates a default term-of-years sentence for juveniles convicted under MCL 750.316. That is, at the point of conviction the maximum sentence that defendant faced, absent additional findings by the trial court, was a term-of-years sentence. Like in *Apprendi*, *Ring*, *Blakely*, and *Cunningham*, defendant's maximum sentence here could only be enhanced following findings made by the court.

Furthermore, the United States Supreme Court rejected a similar argument in *Ring*. In that case, Arizona argued in part that its capital punishment was constitutional because Arizona's first-degree-murder statute specified that "death or life imprisonment" were the only sentencing options. *Ring*, 536 US at 603-604. Therefore, according to Arizona, when the sentencing judge sentenced the defendant to death, he was "sentenced within the range of punishment authorized by the jury verdict." *Id.* at 604. The Supreme Court rejected this argument, explaining that "[t]he Arizona first-degree murder statute authorizes a maximum penalty of death only in a formal sense . . . ." *Id.* (quotation marks and citation omitted). Instead, the Supreme Court examined the effect of the statute over its form, noting that, "[i]n effect, 'the required finding [of an aggravated circumstance] expose[d] [Ring] to a greater punishment than that authorized by the jury's guilty verdict.' " *Id.*, quoting *Apprendi*, 530 US at 494 (second, third, and fourth alterations in original). Similarly, in this case, MCL 750.316 authorizes a life-without-parole sentence for juveniles "only in a formal sense," and, in effect, the

findings mandated by MCL 769.25(6) subjected defendant to greater punishment than that authorized by the jury's guilty verdict.

The prosecution and the Attorney General attempt to distinguish *Ring* from the present case by arguing that, unlike in *Ring*, which required the sentencing judge to find one of several specified aggravating factors, MCL 769.25 does not mandate the presence of any factor before authorizing a life-without-parole sentence. This is a distinction without any real meaning that was rejected in *Blakely*, wherein the Court explained:

> Whether the judge's authority to impose an enhanced sentence depends on finding a specified fact (as in *Apprendi*), one of several specified facts (as in *Ring*), or *any* aggravating fact (as here), it remains the case that the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact. [*Blakely*, 542 US at 305.]

As in *Blakely*, what is critical is that the trial court in this case acquired authority to enhance defendant's sentence from a term of years to life without parole "only upon finding some additional fact." *Id.* In that respect, this case is not distinguishable from *Ring*, *Blakely*, or any of the other United States Supreme Court decisions relative to defendant's Sixth Amendment rights discussed earlier.

The Attorney General also argues that *Ring* is distinguishable because, unlike in *Ring*, in this case the factors in MCL 769.25(6) do not enhance the sentence, but instead act as mitigating factors that can bring the sentence down to a term of years. The Attorney General reads the statute backwards. The term-of-years sentence is the default that can be enhanced on the basis of judicial findings. Thus, under

the statutory configuration, the *Miller* factors are used to seek enhancement of defendant's punishment.

Similarly, the Attorney General argues that neither MCL 769.25 nor *Miller* "requires any fact to be found before a trial court imposes a sentence of life without parole" and, therefore, the life-without-parole sentence was available at the time of conviction. This argument ignores the plain language of the statute and misconstrues *Miller*. Specifically, MCL 769.25(6) provides that upon the prosecution's motion, "the court *shall* conduct a hearing . . . as part of the sentencing process" and "*shall consider the factors* listed in [*Miller*]." (Emphasis added.) By their very nature, the factors enumerated in *Miller* necessitate factual findings. See, e.g., *Gutierrez,* 58 Cal 4th at 1388 (explaining that "*Miller* discussed a range of factors relevant to a sentencer's determination of whether a particular defendant is a rare juvenile offender whose crime reflects irreparable corruption") (emphasis added) (quotation marks and citation omitted); Russell, 56 BC L Rev at 581 ("[T]he consideration of mitigation and aggravation under *Miller* is part of making a particular factual determination: is the juvenile irreparably corrupt and incapable of rehabilitation?"). Moreover, "*Miller* concludes that life without parole is an inappropriate sentence for most juveniles, and may be given only in rare circumstances where certain facts are established. Thus, the factual finding of 'irreparable corruption' aggravates—not mitigates—the penalty." Russell, 56 BC L Rev at 582.[13]

---

[13] Our dissenting colleague erroneously posits that we "latch[] onto a statement in a law review article" to support the proposition that "irreparable corruption" is an "aggravating factor." *Post* at 76. To the contrary, we do not hold that "irreparable corruption" is an "aggravating factor." Rather, the *Miller* Court held that life imprisonment without parole for juvenile homicide offenders is constitutionally

In addition, as noted, MCL 769.25(7) provides that in imposing the sentence, "the court *shall specify* on the record *the aggravating and mitigating circumstances considered* by the court and the court's reasons supporting the sentence imposed." (Emphasis added.) Thus, the language of the statute necessarily requires the trial court to make findings of fact before imposing a sentence of life without parole.[14]

---

permissible only in those rare cases in which a juvenile's crime reflects irreparable corruption. *Miller*, 567 US at ___; 132 S Ct at 2469. The factors provided by the *Miller* Court serve as a guidepost during the sentencing phase to determine if the juvenile's offense reflects irreparable corruption. Absent this determination, life imprisonment without parole violates the Eighth Amendment. Moreover, this is not a maxim derived from a law review article. See, e.g., *Gutierrez*, 58 Cal 4th at 1388 (explaining that "*Miller* discussed a range of factors relevant to a sentencer's determination of whether a particular defendant is a ' " rare juvenile offender whose crime reflects irreparable corruption" ' "), quoting *Miller*, 567 US at ___; 132 S Ct at 2469.

[14] The dissent acknowledges that MCL 769.25(7) requires the sentencing court to "specify on the record the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed." However, the dissent states, "But nowhere does the statute require the trial court to make any particular finding of fact before it is authorized to impose a sentence of life without parole." *Post* at 73. The fallacy in this statement, of course, is that it fails to recognize that, in order to consider and specify an aggravating circumstance on the record, a trial court necessarily must first make findings as to the presence and relevance of the aggravating circumstance. Moreover, if the dissent were correct in its contention that MCL 769.25(7) did not require the sentencing court to make any findings of fact, then the statute would offend the Eighth Amendment because, as discussed in detail above, *Miller* requires an individualized factual inquiry before a juvenile may be sentenced to life without parole. Furthermore, the dissent's argument "overlooks *Apprendi*'s instruction that the relevant inquiry is one not of form, but of effect." *Ring*, 536 US at 604 (quotation marks and citation omitted). In effect, by directing the sentencing court to "consider" the *Miller* factors and specify the aggravating and mitigating circumstances on the record, the statute requires the sentencing court to make findings of fact before imposing the harsher sentence of life without parole.

In a similar argument, the dissent posits that *Miller* "hardly establishes a list of factors that must be met before a sentence of life without parole may be imposed" and states that *Miller* does not "set[] forth any particular facts that must be found before a sentence of life without parole may be imposed." *Post* at 73-74. Instead, according to the dissent, *Miller* "merely require[s] the sentencing court to take into account the individual circumstances of the juvenile offender before determining whether a sentence of life without parole is appropriate in each particular case." *Post* at 74. The dissent concludes that because a sentencing court need only "consider" the *Miller* factors as opposed to make findings on the factors, MCL 769.25 does not violate *Apprendi* and its progeny. Conveniently, the dissent fails to articulate how the court should take into account, without making any findings of fact, a juvenile's immaturity, impetuosity, his or her failure to appreciate risks and consequences, his or her family and home environment, whether the home environment is brutal or dysfunctional, whether the juvenile could extricate herself from the home environment, the circumstances of the offense, the extent of the juvenile's participation in the offense conduct, whether familial and peer pressures may have affected the juvenile, whether the juvenile might have been charged with and convicted of a lesser offense if not for youthful incompetence, whether the juvenile was able to deal with police officers or prosecutors, whether the juvenile was able to assist trial counsel, and, importantly, whether the juvenile exhibits potential for rehabilitation. See *Miller*, 567 US at ___; 132 S Ct at 2468. The dissent's contention that there exists a means by which all these factors must be "considered" without leading to

a single finding of fact defies logic.[15]

In an attempt to bolster its flawed analysis, the dissent focuses on the word "consider" in MCL 769.25(6). Specifically, the statute provides that "[a]t the hearing, the trial court shall *consider* the factors listed in [*Miller*] . . . ." (Emphasis added.) The dissent contends that because the statute directs a court to "consider" the factors as opposed to make findings on the factors, the statute therefore does not require judicial fact-finding to increase a juvenile homicide offender's maximum sentence to life without parole. However, consideration of factors necessarily requires fact-finding, and the terms are often used interchangeably in the law. For example, in the context of child custody proceedings, MCL 722.23 sets forth best-interest factors "to be *considered*, evaluated, and determined" by the trial court, and it is certainly well-settled law that this legislative mandate requires a trial court to make factual findings on these factors. (Emphasis added.) See, e.g., *Bowers v Bowers*, 198 Mich App 320, 328; 497 NW2d 602 (1993) (noting that in a child custody case, "[t]he trial court must consider each of these [best-interest] factors and explicitly state its *findings* and conclusions regarding each") (emphasis added). Similarly, in deciding whether to award alimony, "trial courts should *consider*" several spousal support factors, *Berger v Berger*, 277 Mich App 700, 726-727; 747 NW2d 336 (2008) (emphasis added), and

---

[15] In addition, the basic assertion of the dissent is that we reach our conclusions based on what the dissent labels "a false premise." *Post* at 61. Specifically, the dissent contends that our opinion states that "*Apprendi* and its progeny require that *all* facts relating to a sentence must be found by a jury." *Post* at 61-62. However, the dissent fails to cite where that statement is made, we presume because our opinion does not so state, leading, of course, to the inescapable conclusion that it is the dissent whose argument is based entirely on a false premise.

in considering those factors, trial courts should " *'make specific factual findings* regarding the factors that are relevant to the particular case,' " *Myland v Myland,* 290 Mich App 691, 695; 804 NW2d 124 (2010) (emphasis added) (citation omitted). Moreover, in the criminal context, "consideration" of factors implies fact-finding. See, e.g., *People v Cipriano,* 431 Mich 315, 334; 429 NW2d 781 (1988) (setting forth factors that a trial court "should *consider"* in determining whether a statement was voluntary) (emphasis added); *People v Gipson,* 287 Mich App 261, 264; 787 NW2d 126 (2010) (noting that a trial court's factual findings during a voluntariness inquiry are reviewed for clear error).

In short, the dissent's contention that consideration of factors is distinct from making findings about those factors is a difference without any real meaning, illustrates the tenuous nature of the dissent's flawed analysis, and "ignore[s] reality and the actual text of the statute." *Potter v McLeary,* 484 Mich 397, 438; 774 NW2d 1 (2009) (YOUNG, J., concurring in part and dissenting in part).

The prosecution also argues that, unlike in *Cunningham,* 549 US 270, in which findings of certain aggravating factors required the sentencing court to impose an increased sentence, in this case the sentencing court has discretion under MCL 769.25 to impose the harsher sentence. However, merely because the sentencing court has discretion to impose a harsher penalty does not save MCL 769.25 from being unconstitutional because "[w]hether the judicially determined facts *require* a sentence enhancement or merely *allow* it, the verdict alone does not authorize the sentence." *Blakely,* 542 US at 305 n 8. Indeed, in *Blakely* the Court rejected the state of Washington's attempt to distinguish *Apprendi* from that state's sen-

tencing scheme on the grounds that sentencing courts
had discretion to impose an exceptional sentence. See
*Cunningham*, 549 US at 283, citing *Blakely*, 542 US at
305. The *Blakely* Court explained that judicial discre-
tion cannot serve as a substitute for the Sixth Amend-
ment, explaining:

> JUSTICE O'CONNOR argues that, because determinate
> sentencing schemes involving judicial factfinding entail
> less judicial discretion than indeterminate schemes, the
> constitutionality of the latter implies the constitutionality
> of the former. This argument is flawed on a number of
> levels. First, the Sixth Amendment by its terms is not a
> limitation on judicial power, but a reservation of jury
> power. It limits judicial power only to the extent that the
> claimed judicial power infringes on the province of the
> jury. Indeterminate sentencing does not do so. It increases
> judicial discretion, to be sure, but not at the expense of the
> jury's traditional function of finding the facts essential to
> lawful imposition of the penalty. Of course indeterminate
> schemes involve judicial factfinding, in that a judge (like a
> parole board) may implicitly rule on those facts he deems
> important to the exercise of his sentencing discretion. *But
> the facts do not pertain to whether the defendant has a
> legal right to a lesser sentence—and that makes all the
> difference* insofar as judicial impingement upon the tradi-
> tional role of the jury is concerned. [*Blakely*, 542 US at
> 308-309 (citation omitted) (emphasis added).]

In this case, based solely on the facts that were
decided by the jury, defendant was entitled to a term-
of-years sentence. Therefore, because the factual find-
ings required by *Miller* and MCL 769.25(6) were not
part and parcel of the elements submitted to the jury,
these facts "pertain to whether the defendant has a
legal *right* to a lesser sentence," and merely because the
sentencing court has discretion to impose the harsher
sentence cannot serve as a substitute for defendant's
Sixth Amendment right to a jury. *Id.* at 309.

Finally, in an argument that can best be described as a Herculean attempt at linguistic gymnastics, the Attorney General argues that the default term-of-years sentence mandated by MCL 769.25(9) is not actually the default sentence because "[i]f . . . the prosecutor moves for a life sentence, then the term of years is not the default." This argument misconstrues the meaning of the word "default." "Default" is defined in relevant part as "a selection made [usually] automatically or without active consideration due to lack of a viable alternative[.]" *Merriam Webster's Collegiate Dictionary* (11th ed). Under MCL 769.25, a term-of-years sentence is automatic, and there is no alternative absent the prosecution's motion for a life-without-parole sentence and additional findings by the court. Accordingly and as specifically stated in *Carp*, 496 Mich at 458, a term of years is the default sentence.[16]

To summarize, the default sentence for a juvenile convicted of first-degree murder under MCL 750.316 is a term-of-years prison sentence. MCL 769.25 authorizes a trial court to enhance that sentence to life without parole on the basis of factual findings that were not made by a jury but rather were found by the court. In this respect, the statute offends the Sixth Amendment as articulated in *Apprendi* and its progeny. In order to enhance a juvenile's default sentence to life without parole, absent a waiver,[17] a jury must make findings on the *Miller* factors as codified at MCL 769.25(6) to determine beyond a reasonable doubt

---

[16] Moreover, as already explained, life without parole can never be the default sentence for juveniles under *Graham* and *Miller*.

[17] See *Blakely*, 542 US at 310 (noting that "nothing prevents a defendant from waiving his *Apprendi* rights" and that "[w]hen a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding").

whether the juvenile's crime reflects irreparable corruption. Accordingly, because defendant's sentence for first-degree murder was imposed in a manner that violated the Sixth Amendment, she is entitled to resentencing on that offense.[18]

### B. SEVERABILITY AND SENTENCING OF JUVENILES GOING FORWARD

Although portions of MCL 769.25 are unconstitutional, this does not necessarily render the statute void in its entirety. Rather, MCL 8.5 provides:

> If any portion of an act or the application thereof to any person or circumstances shall be found to be invalid by a court, such invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application, provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be severable.

Indeed, "[i]t is the law of this State that if invalid or unconstitutional language can be deleted from an ordinance and still leave it complete and operative then such remainder of the ordinance be permitted to stand." *Eastwood Park Amusement Co v East Detroit Mayor*, 325 Mich 60, 72; 38 NW2d 77 (1949).

In this case, apart from the provision in Subsection (6) directing the trial court to consider the *Miller*

---

[18] Given our resolution of this issue, we need not address the other issues defendant raises on appeal. We note that we reject defendant's argument that she should be resentenced in front of a different judge on remand. Although resentencing before a different judge may be "warranted by the circumstances" on some occasions, defendant here has not articulated any circumstances that warrant resentencing before a different judge. *People v Coles*, 417 Mich 523, 536; 339 NW2d 440 (1983), overruled in part on other grounds by *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990).

factors and the provision in Subsection (7) directing
the court to articulate aggravating and mitigating
circumstances on the record, MCL 769.25 remains
operable in the event that the findings on the *Miller*
factors are made by a jury beyond a reasonable doubt.[19]
That is, following a conviction of first-degree murder
and a motion by the prosecuting attorney for a sen-
tence of life without parole, absent defendant's waiver,
the court should empanel a jury[20] and hold a sentenc-
ing hearing at which the prosecution is tasked with
proving that the factors in *Miller* support that the
juvenile's offense reflects irreparable corruption be-
yond a reasonable doubt. During this hearing, both
sides must be afforded the opportunity to present
relevant evidence, and each victim must be afforded
the opportunity to offer testimony in accordance with
MCL 769.25(8). Following the close of proofs, the trial
court should instruct the jury that it must consider
whether, in light of the factors set forth in *Miller* and
any other relevant evidence, the defendant's offense
reflects irreparable corruption beyond a reasonable
doubt sufficient to impose a sentence of life without
parole. Alternatively, if the jury decides this question
in the negative, then the court should use its discretion

---

[19] The Sixth Amendment does not require the jury to articulate
mitigating and aggravating circumstances, so Subsection (7) is inoper-
able.

[20] We note that this hearing may be conducted before the jury that
determined the defendant's guilt in the event that the prosecution
moves to impose a life-without-parole sentence after the jury verdict but
before the jury is dismissed. See, e.g., 18 USC 3593(b) (providing that
the sentencing hearing in a federal death-penalty case may be con-
ducted before the jury that determined the defendant's guilt or, in
certain circumstances, before a jury empaneled "for the purpose of" the
sentencing hearing). Alternatively, the court may empanel a new jury
for the purpose of the sentencing hearing in accordance with the court
rules governing empaneling a jury for the guilt phase of the proceeding.
See MCR 6.410; MCR 6.412.

to sentence the juvenile to a term of years in accordance with MCL 769.25(9).

### V. CONCLUSIONS

The Sixth Amendment requires that other than a prior conviction, any fact that increases either the floor or the ceiling of a criminal defendant's sentence beyond that which a court may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant must be submitted to a jury and proved beyond a reasonable doubt. See *Apprendi*, 530 US 466; *Ring*, 536 US 584; *Blakely*, 542 US 296; *Cunningham*, 549 US 270; *Alleyne*, 570 US ___; 133 S Ct 2151. The default sentence for juveniles convicted of first-degree murder—i.e. the sentence authorized by the jury verdict—is a term of years. MCL 769.25 authorizes a trial court to increase that sentence to life without the possibility of parole contingent on the trial court's findings with respect to the *Miller* factors and any other relevant criteria. Because MCL 769.25 makes an increase in a juvenile defendant's sentence contingent on factual findings, those findings must be made by a jury beyond a reasonable doubt. Accordingly, in this case, because defendant was denied her right to have a jury make the requisite findings under MCL 769.25, she is entitled to resentencing on her first-degree-murder conviction.

Vacated and remanded for resentencing consistent with this opinion. Jurisdiction is not retained.

HOEKSTRA, P.J., concurred with BORRELLO, J.

SAWYER, J. (*dissenting*). I respectfully dissent.

While the majority sets forth a strong argument, it ultimately fails because it is based on a false premise:

that *Apprendi*[1] and its progeny require that *all* facts relating to a sentence must be found by a jury. Rather, the principle set forth in those cases establishes only that the Sixth Amendment right to a jury trial requires the jury to find those facts necessary to impose a sentence greater than that authorized by the legislature in the statute itself on the basis of the conviction itself. And the statute adopted by the Michigan Legislature with respect to juvenile lifers does not fit within that category.

Looking first to *Apprendi* itself, the defendant was convicted under a New Jersey statute of possession of a firearm for an unlawful purpose and that statute authorized a sentence of between 5 and 10 years in prison.[2] A separate statute, described as a "hate crime" statute, authorized an extended term of imprisonment of between 10 and 20 years if the defendant committed the crime with a purpose to intimidate a person or group because of their membership in a specified protected class.[3] The statute directed that the finding had to be made by the trial judge and the burden of proof was by a preponderance of the evidence.[4]

The *Apprendi* Court found this statutory scheme invalid, concluding as follows: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[5] The majority in the case before us ignores this ultimate conclusion in *Apprendi*, that the

---

[1] *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000).

[2] *Id.* at 468.

[3] *Id.* at 468-469.

[4] *Id.* at 468.

[5] *Id.* at 490.

facts that must be submitted to the jury are those that increase the prescribed maximum sentence.

But facts that the trial court considers in fixing a sentence that is within the maximum authorized by the statute (without additional facts found by the jury) need not be determined by the jury. The *Apprendi* majority distinguished between fact-finding that authorizes a court to impose a greater sentence than the prescribed statutory maximum and a "sentencing factor." It did so in the context of distinguishing *Apprendi* from the earlier decision in *McMillan v Pennsylvania*.[6] *Apprendi*[7] explained the distinction as follows:

> It was in *McMillan* v. *Pennsylvania*, 477 U. S. 79 (1986), that this Court, for the first time, coined the term "sentencing factor" to refer to a fact that was not found by a jury but that could affect the sentence imposed by the judge. That case involved a challenge to the State's Mandatory Minimum Sentencing Act, 42 Pa. Cons. Stat. §9712 (1982). According to its provisions, anyone convicted of certain felonies would be subject to a mandatory minimum penalty of five years' imprisonment if the judge found, by a preponderance of the evidence, that the person "visibly possessed a firearm" in the course of committing one of the specified felonies. 477 U. S., at 81-82. Articulating for the first time, and then applying, a multifactor set of criteria for determining whether the *Winship*[8] protections applied to bar such a system, we concluded that the Pennsylvania statute did not run afoul of our previous admonitions against relieving the State of its burden of proving guilt, or tailoring the mere form of a criminal statute solely to avoid *Winship*'s strictures. 477 U. S., at 86-88.
>
> We did not, however, there budge from the position that (1) constitutional limits exist to States' authority to define away facts necessary to constitute a criminal offense, *id.*,

---

[6] 477 US 79; 106 S Ct 2411; 91 L Ed 2d 67 (1986).

[7] 530 US at 485-487.

[8] *In re Winship*, 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970).

at 85-88, and (2) that a state scheme that keeps from the jury facts that "expos[e] [defendants] to greater or additional punishment," *id.*, at 88, may raise serious constitutional concern. As we explained:

> Section 9712 neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm. . . . The statute gives no impression of having been tailored to permit the visible possession finding to be a tail which wags the dog of the substantive offense. Petitioners' claim that visible possession under the Pennsylvania statute is "really" an element of the offenses for which they are being punished—that Pennsylvania has in effect defined a new set of upgraded felonies—would have at least more superficial appeal if a finding of visible possession exposed them to greater or additional punishment, cf. 18 U.S.C. §2113(d) (providing separate and greater punishment for bank robberies accomplished through "use of a dangerous weapon or device"), but it does not. *Id.*, at 87-88.

As I will discuss later, the statutory scheme created by our Legislature creates these *McMillan*-like sentencing factors rather than requiring particular facts to be found in order for the trial court to have the authority to impose the greater sentence of life without parole.

The Supreme Court has consistently followed this distinction thereafter. In *Ring v Arizona*,[9] it rejected Arizona's death-penalty statute because it placed on the sentencing judge the responsibility of determining the existence of an aggravating factor necessary to impose the death penalty. Without such a judicial determination, the jury's verdict alone only authorized

---

[9] 536 US 584; 122 S Ct 2428; 153 L Ed 2d 556 (2002).

the imposition of life imprisonment.[10] After analyzing the effect of *Apprendi*, the *Ring* Court summarized the law as follows: "If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt."[11]

Turning to *Blakely v Washington*,[12] the Court considered a sentencing scheme that authorized the trial court to depart upward from a standard sentence set by statute. The defendant was convicted of kidnapping. Although the Washington statute authorized a maximum sentence of up to 10 years, it further provided that the "standard range" for the defendant's offense was 49 to 53 months.[13] But the statute further authorized a judge to impose a sentence above the standard range if he found "substantial and compelling reasons justifying an exceptional sentence."[14] The sentencing judge had to make findings of fact and conclusions of law that justified the exceptional sentence and those findings were reviewable under a clearly erroneous standard.[15] In rejecting the Washington sentencing scheme, the Court noted "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*"[16] Thus, a judge's sentencing authority is limited to "the maximum he may impose *without* any addi-

---

[10] *Id.* at 597.

[11] *Id.* at 602.

[12] 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004).

[13] *Id.* at 299.

[14] *Id.*, quoting Wash Rev Code 9.94A.120(2).

[15] *Id.* at 299-300.

[16] *Id.* at 303.

tional findings."[17] The majority attempts to argue that *Blakely* controls this case because "the trial court in this case acquired authority to enhance defendant's sentence from a term of years to life without parole 'only upon finding some additional fact.' "[18] But this attempt fails because MCL 769.25 does not, in fact, require the finding of an additional fact before it authorizes the imposition of a life-without-parole sentence. Indeed, as *Blakely* points out,[19] the question is not whether the sentencing court engages in judicial fact-finding, but on whether the defendant is entitled to a lesser sentence without those facts being found:

> Of course indeterminate schemes involve judicial fact-finding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10-year sentence—and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury.

Nothing in MCL 769.25 established a legal entitlement to defendant to be sentenced to a term of years rather than life in prison. That is, juvenile offenders who commit first-degree murder, even after the adoption of MCL 769.25, know that they are risking being sentenced to life in prison without the possibility of parole

---

[17] *Id.* at 304.

[18] *Ante* at 51, quoting *Blakely*, 542 US at 305.

[19] 542 US at 309.

simply upon the jury's conviction for first-degree murder without the necessity of the jury finding any additional facts regarding the crime.

This then leads to the Court's decision in *Cunningham v California*.[20] In *Cunningham*, the defendant was convicted of sexual abuse of a child under the age of 14. Under California's determinate sentencing law, the crime was punishable by a lower term of 6 years in prison, a middle term of 12 years in prison, or an upper term of 16 years in prison.[21] But the statute required the imposition of the middle term unless the judge found, by a preponderance of the evidence, the existence of one or more aggravating factors. The judge so found and sentenced Cunningham to the upper term.[22] After a review of *Apprendi* and its progeny, the *Cunningham* Court again summarized the basic principle that comes out of those cases: "If the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied."[23]

This finally leads to the Supreme Court's decision in *Alleyne v United States*,[24] wherein the Court took up the *Apprendi* principle in the context of increases in a mandatory minimum sentence. Allen Alleyne was convicted under a federal robbery statute and a related statute that required minimum sentences for the possession or use of a firearm in certain crimes. That statute required a minimum sentence of 5 years unless a firearm was brandished, in which case the manda-

---

[20] 549 US 270; 127 S Ct 856; 166 L Ed 2d 856 (2007).

[21] *Id.* at 275.

[22] *Id.* at 275-276.

[23] *Id.* at 290.

[24] 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013).

tory minimum was 7 years, and was further raised to 10 years if the firearm was discharged.[25] The verdict form indicated that Alleyne had used or carried a firearm, which would authorize the mandatory 5-year minimum sentence, but did not indicate whether the firearm was brandished, which would authorize the 7-year mandatory minimum.[26] The trial court found that a preponderance of the evidence supported the finding that Alleyne had brandished the weapon and sentenced him to the mandatory minimum of 7 years in prison.[27] While the *Alleyne* Court concluded that the fact of whether the defendant brandished a firearm must be found by the jury in order to increase the mandatory minimum sentence that he faced,[28] the Court also took pains to note that facts that merely influence judicial discretion in sentencing do not have to be found by a jury, stating as follows:[29]

> In holding that facts that increase mandatory mini-mum sentences must be submitted to the jury, we take care to note what our holding does not entail. Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recog-nized that broad sentencing discretion, informed by judi-cial factfinding, does not violate the Sixth Amendment. See, *e.g.*, *Dillon* v. *United States*, 560 U. S. [817, 828-829; 130 S Ct 2683; 177 L Ed 2d 271] (2010) ("[W]ithin established limits[,] . . . the exercise of [sentencing] discre-

---

[25] *Id.* at ___; 133 S Ct at 2155-2156; see 18 USC 924(c)(1)(A).

[26] *Id.* at ___; 133 S Ct at 2156.

[27] *Id.* at ___; 133 S Ct at 2156.

[28] In doing so, the Court explicitly found that its earlier decision in *Harris v United States*, 536 US 545; 122 S Ct 2406; 153 L Ed 2d 524 (2002), could not be reconciled with *Apprendi* and also questioned the continued validity of *McMillan* as it applied to mandatory minimum sentences. *Id.* at ___; 133 S Ct at 2157-2158.

[29] *Id.* at ___; 133 S Ct at 2163 (alterations other than those related to citations in original).

tion does not contravene the Sixth Amendment even if it is informed by judge-found facts" (emphasis deleted and internal quotation marks omitted)); *Apprendi*, 530 U. S., at 481 ("[N]othing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute"). This position has firm historical roots as well. As Bishop explained:

> [W]ithin the limits of any discretion as to the punishment which the law may have allowed, the judge, when he pronounces sentence, may suffer his discretion to be influenced by matter shown in aggravation or mitigation, not covered by the allegations of the indictment. [1] Bishop [Criminal Procedure (2d ed, 1872)] §85, at 54.

> "[E]stablishing what punishment is available by law and setting a specific punishment within the bounds that the law has prescribed are two different things." *Apprendi*, [530 US] at 519, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (THOMAS, J., concurring). Our decision today is wholly consistent with the broad discretion of judges to select a sentence within the range authorized by law.

The Michigan Supreme Court recently considered the application of *Alleyne* to the Michigan sentencing guidelines in *People v Lockridge*.[30] While not directly applicable to this case, I do find its analysis relevant. Particularly, the Court makes the following observation in finding the legislative sentencing guidelines to be constitutionally deficient in light of *Alleyne*: "That deficiency is the extent to which the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e., the 'mandatory

---

[30]  498 Mich 358; 870 NW2d 502 (2015).

minimum' sentence under *Alleyne*."[31] Applying this
same principle to the statute before us, the juvenile
lifer law does not require any particular judicial fact-
finding to increase the potential sentence from a term
of years to life without parole. Indeed, as the Court
observed, the "inquiry is whether the pertinent facts
that must be found are an element of the offense or a
mere sentencing factor."[32]

I would submit that, regardless of whether we look
to *Apprendi* or *Alleyne*, or any of the other decisions of
the United States Supreme Court, the principle to be
applied is simple: Does the statutory scheme enacted
by the Legislature authorize the sentencing court to
impose a particular sentence without any additional
fact-finding or, to impose the particular sentence, must
an additional fact beyond that which supports the
conviction itself be found? If it is the former, the
sentencing court is free to impose the sentence that his
or her discretion concludes is appropriate. If the latter,
then the defendant has the right to have that addi-
tional fact found by a jury beyond a reasonable doubt.

Turning to the statute at issue in this case, I believe
that it fits within the former category—i.e., that no
additional fact-finding is necessary to justify a sen-
tence of life without parole. MCL 769.25 deals with the
sentencing of defendants who were under the age of 18
at the time that they committed a crime punishable by
a sentence of life without parole and provides in
pertinent part as follows:

> (3) If the prosecuting attorney intends to seek a sen-
> tence of imprisonment for life without the possibility of
> parole for a case described in subsection (1)(a), the pros-
> ecuting attorney shall file the motion within 21 days after

---

[31] *Id.* at 364.

[32] *Id.* at 368-369.

the defendant is convicted of that violation. If the prosecuting attorney intends to seek a sentence of imprisonment for life without the possibility of parole for a case described under subsection (1)(b), the prosecuting attorney shall file the motion within 90 days after the effective date of the amendatory act that added this section. The motion shall specify the grounds on which the prosecuting attorney is requesting the court to impose a sentence of imprisonment for life without the possibility of parole.

(4) If the prosecuting attorney does not file a motion under subsection (3) within the time periods provided for in that subsection, the court shall sentence the defendant to a term of years as provided in subsection (9).

(5) If the prosecuting attorney files a motion under subsection (2) requesting that the individual be sentenced to imprisonment for life without parole eligibility, the individual shall file a response to the prosecution's motion within 14 days after receiving notice of the motion.

(6) If the prosecuting attorney files a motion under subsection (2), the court shall conduct a hearing on the motion as part of the sentencing process. At the hearing, the trial court shall consider the factors listed in Miller v Alabama, 576 [sic] US____; 183 L Ed 2d 407; 132 S Ct 2455 (2012), and may consider any other criteria relevant to its decision, including the individual's record while incarcerated.

(7) At the hearing under subsection (6), the court shall specify on the record the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed. The court may consider evidence presented at trial together with any evidence presented at the sentencing hearing.

\* \* \*

(9) If the court decides not to sentence the individual to imprisonment for life without parole eligibility, the court shall sentence the individual to a term of imprisonment for which the maximum term shall be not less than 60

years and the minimum term shall be not less than 25 years or more than 40 years.

The majority fundamentally misreads this statute. First, the majority looks to *People v Carp*[33] and its reference to MCL 769.25 establishing a "default sentencing range" for defendants convicted of first-degree murder committed while a juvenile. But the majority downplays the fact that this statement is made in the context of the fact that this "default sentencing range" is only applicable "absent a motion by the prosecutor seeking a sentence of life without parole" and that the trial court may impose a sentence of life without parole after such a motion is filed and conducting a hearing.[34] The majority then performs an act of legalistic legerdemain and reinterprets *Carp* as follows: "Stated differently, at the point of conviction, absent a motion by the prosecution and *without additional findings* on the *Miller*[35] factors, the maximum punishment that a trial court may impose on a juvenile convicted of first-degree murder is a term-of-years prison sentence."[36] If this statement were true, then I would agree with the majority that the question of life without parole must be submitted to the jury. But the statement is simply untrue. There are no additional findings that must be made in order for a defendant to be subjected to a sentence of life without parole.[37]

[33] 496 Mich 440, 458; 852 NW2d 801 (2014).

[34] *Id.*

[35] *Miller v Alabama*, 567 US ___; 132 S Ct 2455; 183 L Ed 2d 407 (2012).

[36] *Ante* at 44 (emphasis added).

[37] Arguably, the trial court must "find" that the prosecutor filed a motion within 21 days after conviction, as required by MCL 769.25(3). But I doubt that this is the type of "fact" that the Supreme Court had in mind in determining a defendant's Sixth Amendment rights in *Apprendi* and its progeny.

MCL 769.25(6) does require the trial court to conduct a hearing before it may impose a sentence of life without parole on a juvenile offender. And it further requires that the trial court "consider" the factors listed in *Miller*, as well as any other criteria the trial court deems relevant to its decision. MCL 769.25(7) then requires that "the court shall specify on the record the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed." But nowhere does the statute require the trial court to make any particular finding of fact before it is authorized to impose a sentence of life without parole. Rather, after conducting the hearing and considering the evidence presented at the hearing as well as the evidence presented at trial, the trial court makes its decision and must state on the record the reasons for that decision. As our Supreme Court noted in *Carp*, this process allows for the "individualized sentencing" procedures established by *Miller*.[38] This procedure also presumably allows for more meaningful appellate review of the sentence.

As for *Miller* itself, while MCL 769.25(6) directs the trial court to "consider the factors listed in <u>Miller</u> v <u>Alabama</u>," the opinion itself hardly establishes a list of factors that must be met before a sentence of life without parole may be imposed. Rather, the opinion speaks in general terms about why mandatory life without parole for a juvenile offender violates the Eighth Amendment and what must be considered before imposing a sentence of life without parole. For example, with respect to the former point, the Court[39] states that a mandatory life-without-parole sentence for a juvenile

---

[38] *Carp*, 496 Mich at 458-459.

[39] *Miller*, 567 US at ___; 132 S Ct at 2468.

precludes consideration of his chronological age and its
hallmark features—among them, immaturity, impetuos-
ity, and failure to appreciate risks and consequences. It
prevents taking into account the family and home envi-
ronment that surrounds him—and from which he cannot
usually extricate himself—no matter how brutal or dys-
functional. It neglects the circumstances of the homicide
offense, including the extent of his participation in the
conduct and the way familial and peer pressures may have
affected him.

As for the latter point, the Court directs the sentencing
court to "take into account how children are different,
and how those differences counsel against irrevocably
sentencing them to a lifetime in prison."[40] But neither
*Miller* nor the statute sets forth any particular facts
that must be found before a sentence of life without
parole may be imposed. Rather, both merely require
the sentencing court to take into account the individual
circumstances of the juvenile offender before determin-
ing whether a sentence of life without parole is appro-
priate in each particular case. But this hardly estab-
lishes an "element of the crime" that must be
determined by a jury beyond a reasonable doubt.[41]

Moreover, I note that an underlying issue in this
case—the trial court's failure to adopt any particular
burden of proof because none is set forth in the
statute—further supports the conclusion that the stat-
ute does not require any particular finding of fact.
Rather, I would suggest that the Legislature did not
include a burden of proof out of oversight or a desire to
leave it to the courts to fashion one, but because it was
unnecessary because the statute does not require any-
thing to be proved. Rather, it only requires consider-
ation of the relevant criteria to guide the trial court in

---

[40] *Id.* at ___; 132 S Ct at 2469.

[41] *Apprendi*, 530 US at 477.

determining the appropriate individualized sentence for the defendant before it.

The majority perpetuates its mistaken reading of the statute when it states that the "Legislature conditioned defendant's life-without-parole sentence on two things: (1) the prosecution's filing of a motion to impose the sentence and (2) the trial court's findings with respect to the *Miller* factors and 'any other criteria relevant to its decision . . . .' "[42] While the first point is correct—the prosecution must file a motion—the second point, of course, is erroneous. The statute does not require findings, but only that the trial court "consider" the *Miller* "factors" and other relevant criteria. And "consider" does not mean to make findings, but, rather, "to think about carefully" and "to think about in order to arrive at a judgment or decision" and "may suggest giving thought to in order to reach a suitable conclusion, opinion, or decision[.]" *Merriam-Webster's Collegiate Dictionary* (11th ed), pp 265-266.

The majority rejects the argument in the Attorney General's amicus curiae brief that no additional facts are needed to authorize a life-without-parole sentence as follows:[43]

> However, if, as the prosecution and the Attorney General contend, the "maximum allowable punishment" at the point of defendant's conviction is life without parole, then that sentence would offend the Constitution. Under *Miller*, a mandatory *default sentence* for juveniles *cannot* be life imprisonment without the possibility of parole. Such a sentence would not be an individualized sentence taking into account the factors enumerated in *Miller*.

But, of course, the statute does not provide for a *mandatory* default sentence of life without parole. And

---

[42] *Ante* at 45, quoting MCL 769.25(6).

[43] *Ante* at 49.

it is the mandatory nature of the life-without-parole statutes that offended the Court in *Miller*, resulting in a holding that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders."[44] And MCL 769.25 commits no such offense. The majority also latches onto a statement in a law review article by Professor Sarah Russell that "*Miller* concludes that life without parole is an inappropriate sentence for most juveniles, and may be given only in rare circumstances where certain facts are established. Thus, the factual finding of 'irreparable corruption' aggravates—not mitigates—the penalty."[45] But, with all due respect to Professor Russell and the majority, *Miller* hardly establishes "irreparable corruption" as an aggravating factor. Rather, *Miller* uses that term in a quotation from *Roper v Simmons*, 543 US 551, 573; 125 S Ct 1183; 161 L Ed 2d 1 (2005), which noted the difficulty in distinguishing between "transient immaturity" and "irreparable corruption."[46] It uses that point to support its statement that "[a]lthough we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison."[47] This hardly establishes "irreparable corruption" as an aggravating factor that must be found in order for the Eighth Amendment to allow the imposition of a life-without-parole sentence on a juvenile offender.

---

[44] *Miller*, 567 US at ___; 132 S Ct at 2469.

[45] Russell, *Jury Sentencing and Juveniles: Eighth Amendment Limits and Sixth Amendment Rights*, 56 BC L Rev 553, 582 (2015).

[46] See *Miller*, 567 US at ___; 132 S Ct at 2469.

[47] *Id.* at ___; 132 S Ct at 2469.

Finally, the majority conflates the observation made in *Carp*[48] that MCL 769.25 creates a "default sentence" of a term of years if the prosecutor fails to move for a sentence of life without parole with a requirement that there be additional findings in order to impose a life-without-parole sentence. Indeed, the majority describes the Attorney General's argument that a term-of-years sentence is not the "default sentence" as a "Herculean attempt at linguistic gymnastics."[49] But the only linguistic gymnastics here, Herculean or otherwise, are those of the majority. It attempts to create a "default sentence" under the statute when none exists once the prosecutor has moved for a life sentence. And the majority repeatedly states that the statute requires "additional findings" in order to authorize a sentence of life without parole when no such requirement is established under the statute.

In conclusion, there is no need to empanel a jury to make any additional factual findings to authorize the trial court to impose a sentence of life without parole. Under MCL 769.25, the only factual finding necessary to authorize the trial court to impose a sentence of life without parole was that defendant's involvement in the killing of her father constituted first-degree murder. The jury concluded that it did. Thus, *Apprendi* and the Sixth Amendment are satisfied and the trial court possessed the statutory authority to impose a sentence of life without parole, which it did. In fact, the trial court has done so three times: first, when it was mandatory, then a second time on remand after the decision in *Miller*, and then a third time on remand after the decision in *Carp* and the passage of MCL 769.25. Perhaps the *Lockridge* majority says it best in

[48] *Carp*, 496 Mich at 458.

[49] *Ante* at 58.

observing that "unrestrained judicial discretion within a broad range is in; legislative constraints on that discretion that increase a sentence (whether minimum or maximum) beyond that authorized by the jury's verdict are out."[50] The majority attempts to find a legislative restraint on the trial court's sentencing discretion where none exists.

For these reasons, I would affirm.

---

[50] *Lockridge*, 498 Mich at 375.